UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC RANDLE ATKINSON,**

                **Petitioner,**

      **v.**

**JAY FORSHEY, WARDEN,**
**Noble Correctional Institution,**

                **Respondent.**

             **Case No. 2:21-cv-5316**
             **Judge Michael H. Watson**
             **Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

      Eric Randle Atkinson, a state prisoner proceeding without the assistance of counsel, seeks a writ of habeas corpus.  The matter is before the undersigned Magistrate Judge to consider the Petition (ECF No. 1), the State Court Record (ECF Nos. 10, 10-1, 20-1), Respondent's Answer/Return of Writ (ECF No. 11), and Petitioner's Traverse and Amended Traverse (ECF Nos. 14, 17).  For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **DENY** the Grounds for Relief in the Petition and **DISMISS** the case.  The Undersigned further **RECOMMENDS** that the Court **DENY** a certificate of appealability.

## I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE

      In 2018, Petitioner pled guilty and was convicted of three offenses in the Muskingum County, Ohio, Court of Common Pleas.  (Petition, ECF No. 1, PageID 1; State Court Record, ECF No. 10, PageID 40-42.)  In this action, he challenges those convictions and his aggregate eight-year prison sentence.  (ECF No. 1, PageID 2.)

      Ohio's Fifth District Court of Appeals summarized the facts and procedural history of the state court case as follows:

{¶2} Atkinson was indicted on Count One, Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; Count Two, Domestic Violence (Prior Offense), in violation of 2919.25(A), a felony of the fourth degree; Counts Three and Four, Assault on a Peace Officer, in violation of R.C. 2903.13(A), each a felony of the fourth degree; and Count Five, Resisting Arrest, in violation of R.C. 2921.33(B), a first degree misdemeanor.

{¶3} Atkinson entered a guilty plea on January 11, 2018, to Counts One [felonious assault], Two [domestic violence], and Five [resisting arrest]. The state agreed to dismiss Counts Three and Four [assault on a peace officer]. A pre-sentence investigation report was prepared. According to the report, A.B. was taking her children trick-or-treating for Halloween on October 29, 2017. She went with her friend in her friend's neighborhood, who lives near Atkinson. Atkinson is the father of the children. As they walked past Atkinson's residence, he came out to the street wearing a mask to scare the children. When A.B. asked him to stop, they began arguing. Atkinson pushed her, then she kicked him, and he punched her in the face, and then pushed her again. A.B. and her group went back to her friend's residence and called the Sherriff's office. A.B. began vomiting and feeling sick, and while speaking with law enforcement, she lost consciousness. The Officers then responded to Atkinson's residence. Atkinson admitted assaulting A.B., but claimed it was in self-defense because she kicked him in the groin.

{¶4} Atkinson was sentenced on February 12, 2018. The trial court merged Count One [felonious assault] and Count Two [domestic violence]. The state elected to move forward on Count One. The trial court sentenced Atkinson to an eight-year sentence on Count One and a six-month sentence on Count Five [resisting arrest], to be served concurrently for an aggregate sentence of eight years.

*State v. Atkinson*, 5th Dist. Muskingum No. CT2018-0015, 2018-Ohio-4290, 2018 WL 5279078, ¶¶ 2-4 (Oct. 22, 2018) (hereinafter "*Atkinson I*"). (ECF No. 10, PageID 76-78.)

Petitioner filed a timely **direct appeal**, raising one assignment of error: "The Trial Court Abused Its Discretion in Sentencing The Appellant To A Maximum Prison Term." *Atkinson I*, ¶ 6. (ECF No. 10, PageID 44, 51.) The Court of Appeals overruled the assignment of error and affirmed the judgment of the Muskingum County Court on October 22, 2018. *Atkinson I*, ¶ 21. (ECF No. 10, PageID 76-85.)

Petitioner did not timely appeal the Court of Appeals' judgment. But on December 31, 2018, he asked the Supreme Court of Ohio to allow a delayed appeal. (ECF No. 10, PageID 86-88.) The Supreme Court of Ohio denied the motion with two justices dissenting. *See State v.*

2

*Atkinson*, 154 Ohio St. 3d 1510, 2019-Ohio-601, 116 N.E.3d 1289 (Feb. 20, 2019) (table). (ECF No. 10, PageID 101.) Petitioner did not seek further direct review from the Supreme Court of the United States. (ECF No. 1, PageID 3.)

Also in December 2018, Petitioner filed a **first petition for post-conviction relief** in the state trial court. (ECF No. 10, PageID 102-105.) He raised two claims, one of which is relevant here: "Petitioner was denied evidence favorable to defense. Also was denied expert assistance." (*Id.*) He later sought to amend his petition to raise an issue concerning a perceived sentencing disparity between him and other offenders, which he believed showed the trial judge's bias. (ECF No. 10, PageID 112- 118.) The trial court denied the petition/motions, finding that Petitioner had failed to provide any evidence in support of his claims and that the claims should have been raised on direct appeal. (ECF No. 10, PageID 124.)

Petitioner appealed the trial court's order denying his first post-conviction petition. (ECF No. 10, PageID 128-130.) He raised one assignment of error concerning medical records that the prosecution allegedly did not provide: "The trial court erred by denying Atkinson's petition for post-conviction relief without a hearing." *State v. Atkinson*, 5th Dist. Muskingum No. CT2019-0055, 2020-Ohio-3122, ¶ 7 (May 21, 2020) (hereinafter "*Atkinson II*"). (ECF No. 10, PageID 135.) The Court of Appeals agreed with Petitioner on one issue but affirmed the trial court's ultimate decision to deny his post-conviction petition. *Atkinson II*, ¶¶ 18-19, 22. (ECF No. 10, PageID 151-160.) As relevant here, the Court of Appeals said:

{¶18} We do agree with Appellant his claim the State withheld exculpatory medical evidence (an alleged *Brady* violation) depends on evidence outside the original appellate record and would not be barred by res judicata.

{¶19} However, we agree with the trial court Appellant failed to provide any evidence to support his *Brady* violation claim. Appellant's mere conclusory opinion was not supportive by any affidavit(s) or other medical evidence. Based upon the record before the trial court concerning the extent of the victim's injuries, which resulted in her undergoing multiple surgeries, we find the trial court did not abuse

3

its discretion in denying Appellant's petition without a hearing for this independent reason.

*Atkinson II*, ¶¶ 18-19.

Petitioner sought further review of this decision from the Supreme Court of Ohio. (ECF No. 10, PageID 162-163.) He presented three propositions of law:

[1.] WHEN THE RECORD DOES NOT SUPPORT A CLAIM OF FELONIOUS ASSAULT REST SOLELY ON THE WORD OF THE VICTIM AND IS NOT VERIFIED BY INDEPENDENT MEDICAL SOURCES OR STATEMENTS BY PHYSICIANS, THEN THE TRIAL COURT ABUSE ITS DISCRETION WHEN SENTENCING THE APPELLANT WITHOUT A FACTUAL SOURCE, VIOLATES Appellant's due process.

[2.] THE TRIAL COURT VIOLATED THE APPELLANTA 6th AMENDMENT RIGHT TO TRIAL BY JURY WHEN HE SENTENCED THE APPELLANT TO THE MAXIMUM SENTENCE RELYING ON FACTS NOT PROVEN BEYOND A REASONABLE DOUBT TO A JURY OF HIS PEERS OR AMDIITED BY THE APPELLANT.

[3.] TRIAL COURT CONSISTANTLY DEMONSTRATED A DESPARITY IN SENTENCING, VIOLATING THE STATUTE OF OHIO REVISED CODE 2953.21 (5) AND O.R.C. 2929.11.

(ECF No. 10, PageID 165 (as in original).) The Supreme Court of Ohio declined to review the case further. *State v. Atkinson*, 159 Ohio St. 3d 1520, 2020-Ohio-4388, 152 N.E.3d 331 (Sep. 15, 2020) (table). (ECF No. 10, PageID 193.) It does not appear that Petitioner sought review from the Supreme Court of the United States with respect to his first post-conviction petition.

In March 2021, Petitioner filed a **second petition for post-conviction relief**. (ECF No. 10, PageID 194-237.) He:

argued that he was denied due process of law because the trial court abused its discretion when it found that the victim had suffered injuries from appellant's actions that required surgery. Appellant claimed that he had received exculpatory evidence during a deposition that took place for a civil action filed years after the guilty plea in his criminal trial. Appellant also challenged his sentence and claimed that the trial court erred by barring his search and seizure claim.

*State v. Atkinson*, 5th Dist. Muskingum No. CT2021-0018, 2021-Ohio-3414, 2021 WL 4435344,

¶ 7 (Sep. 27, 2021) (hereinafter "*Atkinson III*"). (ECF No. 10, PageID 194-205.) In April 2021, the trial court denied his second petition for several reasons. (ECF No. 10, PageID 242.)

Petitioner filed a timely appeal. (ECF No. 10, PageID 243.) He raised three assignments of error:

> I) APPELLANT'S DUE PROCESS WAS DENIED BY THE IMPROPER STATE-MENT OF THE FACT FINDER OF EXCULPATORY EVIDENCE THAT APPELLANT HAS BEEN DENIED AND NOW IS CONTRADICTED
>
> II) TRIAL COURT ERRORED OR ABUSED ITS DISCRETION BY DENING APPELLANT A EVIDENTIARY HEARING
>
> III) TRIAL COURT ERRORED BY BARRING APPELLANT GROUNDS WITH THE DOCTRINE OF RES JUDICATA WHEN A CONSITUTIONAL VIOLATION ACCURED 4th AND 14th AMENDMENT WITH THE NEWLY DISCOVERED EVIDENCE

(ECF No. 10, PageID 250 (as in original).) The Court of Appeals overruled his assignments of error and affirmed the trial court. *Atkinson III*, ¶¶ 24-25. (ECF No. 10, PageID 276-284.) The court said:

> {¶21} In reviewing appellant's petition, we find that appellant did not satisfy the requirements of R.C. 2953.23 [concerning successive post-conviction petitions]. We agree with the trial court that appellant failed to provide any evidence in support of his support his claim that the victim in this case did not suffer injuries that required surgery. Appellant also failed to demonstrate that he was unavoidably prevented from discovering the facts necessary for his claims for relief and that, but for constitutional error at trial, no reasonable factfinder would have found him guilty[.]
>
> {¶22} We further find that the issues that appellant raises are barred by the doctrine of res judicata. Pursuant to the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised on direct appeal from that judgment. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus (1967). The claims that appellant raises either were, or could have been, raised in one of his prior appeals.
>
> {¶23} We find, therefore, that the trial court did not err in denying appellant's successive petition without a hearing.

*Atkinson III,* ¶¶ 21-23.  (ECF No. 10, PageID 282.)

Petitioner appealed to the Supreme Court of Ohio a third time.  (ECF No. 10, PageID

285.)  He asserted three Propositions of Law:

> [1.]    The Trial Court violates the Appellant's Right to Substantial Due Process
> when it Failed to Verify Elements of Felonious Assault Through Independent
> Sources such as Medical Reports or Anyone with a Medical Background; and the
> Court of Appeals Erred when the Court Affirmed Appellant's Conviction Based on
> No Factual Source.
>
> [2.]    The Court of Appeals Erred to the Prejudice of the Appellant Substantial
> Due Process Rights by Holding that the Appellant Failed to Satisfy the
> Requirements of R.C. 2953.23, and by Holding that the Appellant Failed to
> Establish that the Victim Did Not Suffer Injuries that Required Surguries.
>
> [3.]    The Court of Appeals Erred to the Prejudice of the Appellant's Substantial
> Due Process Right when it Held the Trial Court Did Not Err by Denying the
> Appellant's Successive Petition Without a Hearing.

(ECF No. 10, PageID 287 (as in original).)  The Supreme Court of Ohio again declined to review

the case.  *State v. Atkinson*, 165 Ohio St. 3d 1495, 2021-Ohio-4515, 178 N.E.3d 532 (Dec. 28,

2021) (table).  (ECF No. 10, PageID 305.)  It does not appear that Petitioner sought further

review from the Supreme Court of the United States.

Petitioner submitted the instant **Petition for a Writ of Habeas Corpus** under 28 U.S.C.

§ 2241 on November 10, 2021.  (ECF No. 1 (hereinafter "Petition"), PageID 9.)  It was received

and filed by the Clerk of this Court on November 15, 2021.  He identifies four Grounds for

Relief concerning the victim's injuries, his sentence, and the circumstances surrounding his

arrest, which are discussed in more detail below.  Thereafter, Respondent filed the State Court

Record, including a transcript of Petitioner's sentencing hearing (ECF Nos. 10 and 10-1), and an

Answer/Return of Writ to the Petition (ECF No. 11 (hereinafter "Answer").)  Petitioner filed a

Traverse.  (ECF No. 14 (hereinafter "Traverse").)

In December 2022, after providing Petitioner notice, this Court recharacterized the Petition as having been brought under 28 U.S.C. § 2254, rather than 28 U.S.C. § 2241. (ECF Nos. 16, 18.) The Court also accepted Petitioner's amendment to his Traverse. (ECF No. 17 (hereinafter "Amd. Traverse").

Finally, this Court ordered Respondent to add a transcript of Petitioner's change of plea hearing to the record. (ECF No. 19.) Respondent did so. (ECF No. 20-1.) The matter is now ready for this Court's review.

## II.    LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, governs this habeas corpus matter. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. It says that a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Thus, Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Some procedural considerations precede these merits determinations, however. *Daniels v. United States*, 532 U.S. 374, 381 (2001). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration.

28 U.S.C. § 2254(b), (c); *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). More specifically, a petitioner must "fairly present" his claims to the state courts, including the state's highest court, before seeking federal habeas corpus review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 845-48 (1999). In Ohio, this includes direct and delayed appeal to the Ohio Court of Appeals and to the Supreme Court of Ohio. It also may include the filing of a petition for post-conviction relief under Ohio Revised Code § 2953.21. *Manning v. Alexander*, 912 F.2d 878 (6th Cir. 1990).

Fair presentment "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). A petitioner must also do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984) ("the habeas petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law"). It also means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1727 (2022).

If a prisoner fails to fairly present his claims to the state courts, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Where a petitioner has failed to exhaust claims but it appears that

those claims would be barred if presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman,* 501 U.S. at 735 n.1.

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made during the trial or the appeal before a federal court intervenes in the state criminal process. *See generally Robertson v. Fender*, No. 20-4215, 2021 WL 1978359, at *2 (6th Cir. Apr. 28, 2021) (citing *O'Sullivan,* 526 U.S. at 845, 847-48). As the Supreme Court of the United States found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

One "common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021). A petitioner may also procedurally default a claim by failing to comply with state procedural rules when presenting such a claim. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright,* 433 U.S. at 80)). In this situation, "[a] claim is procedurally defaulted if three conditions are met: (1) 'there is a state procedural rule with which the petitioner failed to comply;' (2) 'the state courts actually enforced the state procedural sanction;' and (3) the state procedural rule is 'an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim.'" *Avery v. Wainwright*, No. 20-3530, 2022 WL 1498431, at *7 (6th Cir. May 12, 2022) (quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002)); *McNeill v.*

*Bagley*, 10 F.4th 588, 595 (6th Cir. 2021), *cert. denied sub nom. McNeill v. Shoop*, 142 S. Ct. 1377 (Mar. 21, 2022) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

A petitioner's procedural default may be excused, allowing a federal court to review an otherwise defaulted claim, if "the petitioner demonstrates 'that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error.'" *Avery*, 2022 WL 1498431, at *7 (quoting *Monzo*, 281 F.3d at 576); *Wainwright v. Sykes*, 433 U.S. 72 (1977). A petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).

Procedural default may also be excused where a petitioner shows he is actually innocent. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## III.  PETITIONER'S GROUNDS FOR RELIEF

Petitioner raises four grounds for relief before this Court. These grounds are, along with the facts alleged in support:

> **GROUND ONE:** In ground one the State by and through the prosecuting attorney had a constitutional [*sic*] to turn over all victim's medical records pursuant to Criminal R. 16(c)[.] No medical records were turned over to the defense, Petitioner could have rebutted medical testimony presented by the State[.]
>
> [T]he claim that the victim suffered serious physical harm, which is an element of the offense of Felonious assault, at the sentencing hearing the trial court claimed to victim had two surgeries, and suffers from a pinched nerv[e] and a concussion, none of which is supported by the record[.]  [L]ater attorneys for the arresting police officers, claim in several depositions that the victim suffered a broken jaw.

(Petition, PageID 6.)

10

**GROUND TWO**:  In ground two the trial court and prosecuting attorney made several references to injuries the victim suffered.  When going through discovery petitioner realized that there was no records from any medical professional or doctor, dentist or psyc[h]ologist.

Ohio allows a criminal defendant the right to confront his accusers with all exculpatory evidence or evidence that would rebut a State's witnesses['] testimony.  When a trial court states on the records that the victim had two s[u]rgeries, in fact there was no evidence of serious physical harm contained in the record or given to the defense[.]

(Petition, PageID 6.)

**GROUND THREE**:  Trial Court sentenced the petitioner to the maximum sentence, relying on evidence that was not proven to a jury beyond a reasonable doubt or admitted by the defendant[.]

(Petition, PageID 6.)

**GROUND FOUR**:  In ground four the Muskingum County Sheriff's office was called in response to a call from a friend of the victim to report a domestic violence.  Sheriff's deputies went directly to the friend's house to get at what occurred[.]

Petitioner was accused by [A.B.] of punching her in the face.  After speaking with [A.B.] the deputies had one side of the dispute when they went to the home of the petitioner, he was in his kitchen playing guitar and singing along with his girl and his sister.

The Muskingum County Sheriff's deputies violated the [Petitioner's] rights by making entry into the [Petitioner's] home without probable cause and exigent circumstances.

Sheriff's deputies entered into [Petitioner's] home when [he] refused to come out his home without being served a warrant.

(Petition, PageID 7-8.)

## IV.    <u>ANALYSIS</u>

The undersigned Magistrate Judge, upon review of all the filings and the record,

concludes that Petitioner is not entitled to habeas corpus relief on any of his Grounds for Relief.

The Undersigned therefore **RECOMMENDS** that the Court **DENY** the Grounds for Relief and

**DISMISS** this case.

11

A.     <u>Ground One and Ground Two – the Victim's Injuries</u>

In  Grounds One and Two, Petitioner challenges his felonious assault conviction, specifically, the "serious physical harm" element of that crime.  *See* Ohio Rev. Code § 2903.11(A)(1) ("No person shall knowingly . . . [c]ause serious physical harm to another . . ."). His claims have several dimensions, but his overarching concern is whether the victim actually suffered serious physical harm.

Petitioner questions whether the state provided sufficient supporting evidence to him or proved to the trial court enough facts to satisfy that element.  (Petition, PageID 6; Traverse, PageID 366-369.)  He asks, perhaps rhetorically, whether a prosecutor must demonstrate the elements of a crime on the record and whether the state trial court was guessing as to the extent of the victim's injuries.  (Traverse, PageID 366, 368.)  He raises a somewhat related concern with respect to his sentence, which is addressed in Ground Three.

Petitioner's arguments appear to proceed in alternative, starting from the proposition that there is no medical evidence in the record to prove that the victim suffered serious physical harm.  That is, Petitioner appears to argue that *either* such evidence existed (sufficient to prove his guilt) and the state failed to turn it over to him, violating his right to discovery, due process, and to confront his accuser; *or* the evidence did not exist, in which case he could not be convicted and sentenced.

Petitioner factually roots his arguments in a "contradiction" he perceived after discovery was conducted in a later, related civil rights case.  (Traverse, PageID 366-368; Second Post-Conviction Petition, ECF No. 10, PageID 197-199.)  After his conviction in 2018, Petitioner sued officers involved in his arrest, alleging among other things "that excessive force was used during his arrest" and that "defendants entered his residence without probable cause."  *Atkinson v. Muskingum Cnty. Comm'rs.*, No. 2:19-cv-2562, 2020 WL 886217, at *1 (S.D. Ohio Feb. 24,

2020) (dismissing case without prejudice); *Atkinson v. Muskingum Cnty. Comm'rs.*, No. 2:20-cv-1642, 2021 WL 1117860, at *1 (S.D. Ohio Mar. 24, 2021) (dismissing re-filed case) (together, the "§ 1983 case"). The issues surrounding Petitioner's arrest are discussed further in Ground Four.

In the § 1983 case, Petitioner's deposition was taken, and an attorney for the defendant officers—referred to as Attorney Humphrey in the Traverse—asked Petitioner about punching the victim in the face and "break[ing] her jaw." (Traverse, PageID 366-367; *see also* Second Post-Conviction Petition, ECF No. 10, PageID 197-199, 211.) Petitioner reportedly had not heard of this particular injury, which he views as different from the injuries described during the criminal proceedings. (*See id*.) He appears to argue here that the contradiction between what the trial judge said at his sentencing hearing in 2018 about the victim's injuries, and what Attorney Humphrey asked in 2020 during his civil deposition demonstrates that the trial court was wrong or making factual findings without support and that, ultimately, "the state could not satisfy the element of 'serious physical harm.'" (Traverse, PageID 366-368.)

The Undersigned will begin with Petitioner's guilty plea and its impact, because the plea resolves his questions about proof, and also limits the issues he can raise in this case. The State Court Record reflects that Petitioner, with the assistance of counsel, pled guilty to three charges, including felonious assault, on January 10, 2018. (ECF No. 10, PageID 33-35 ("Plea of Guilty" form) and PageID 36-37 (Entry accepting guilty plea); ECF No. 20-1, PageID 394-406 (Transcript of Change of Plea Hearing).) The state trial court accepted his guilty plea after hearing from the state and Petitioner's counsel and after discussing the plea with Petitioner. (*Id*.)

Petitioner did not file a motion to withdraw his plea in state court. He indirectly sought to undermine his conviction in post-judgment filings with the issues he raises in the Petition.

(*See* First Post-Conviction Petition, ECF No. 10, PageID 103 (alleging no medical evidence to support victim's claims and that trial court relied on evidence never given to defense); Motion for Expert Assistance, ECF No. 10, PageID 110 (alleging victim lied about her injuries and that there were no medical records to support them); Second Post-Conviction Petition, ECF No. 10, PageID 197-199 (alleging a contradiction in the evidence about the victim's injuries).) Similarly, his grounds for relief in the Petition do not directly allege that his plea was unknowing and involuntary, and he does not identify any particular problem with the plea proceeding, the plea colloquy, or the advice he received from counsel. (Petition, PageID 6-8.)

"[A] guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). This means that when Petitioner admitted he was guilty of felonious assault, he admitted that he caused serious physical harm to the victim. No further proof was required. *See id.*; *Menna v. New York*, 423 U.S. 61, 63 n.2 (1975) ("a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." Admitted "factual guilt is a sufficient basis for the State's imposition of punishment.").

To the extent Petitioner may be alleging that the factual basis for his guilty plea was inadequate, this claim cannot support relief in a habeas corpus case. *Watkins v. Lafler*, 517 F. App'x 488, 500 (6th Cir. 2013) ("the claim that the factual basis for a guilty plea was insufficient is not a cognizable claim for habeas corpus"). Such a claim "does not provide a basis for federal habeas relief . . . because there is no federal constitutional requirement that a factual basis

supporting a guilty plea be established . . . so long as the plea is intelligently and voluntarily made." *David v. Birkett*, No. 05-cv-71519, 2008 WL 4822019, at *5 (E.D. Mich. Nov. 4, 2008) (citing *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) and *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

In any event, the following factual basis was provided in Petitioner's case, as shown in the transcript of the change of plea hearing.  The prosecutor said:

> This case came about on October 29th, 2017. At approximately 7:30 in the evening officers were dispatched to 6500 Mack Drive in Nashport, here in Muskingum County, Ohio in reference to an alleged assault that occurred at 6250 Tanglewood Drive.
>
> When officers arrived they made contact with the victim of this case who is [A.B.]. She was able to tell them that the defendant, Eric Atkinson had punched her in the face, and immediately thereafter she actually passed out and became unconscious.
>
> Her friend who was with her, a [J.T.], was able to convey to the officers that she and [A.B] were trick or treating with their children when the defendant, who is the ex-boyfriend of the victim, arrived and wanting to talk to the children and scaring them. And so the victim -- a verbal argument ensued at which point the defendant pushed and then punched the victim, and that's when she went back into the house and called the officers.
>
> The EMS was called out.  The victim suffered a concussion.  And when officers went to speak with Mr. Atkinson, he began to fight with the officers and resist his arrest. And this occurred here in Muskingum County, State of Ohio.

(Transcript of Change of Plea Hearing, ECF No. 20-1, PageID 405-406.)  Petitioner's counsel responded:

> Your Honor, we'll stipulate to the subset of those facts necessary to find -- for a finding of guilt for the three counts that he's pled guilty to and reserve the right to challenge or supplement those facts at the sentencing hearing.

(*Id*., PageID 406.)  Counsel also indicated his belief that Petitioner "is entering his plea knowingly, intelligently and voluntarily."  (*Id*., PageID 398.)  The trial court judge then questioned Petitioner directly, asking whether he understood (among other things) that he was "giving up [his] right . . . to require the prosecutor to prove [your] guilt beyond a reasonable

15

double of every element," and, when Petitioner agreed, accepted his plea.  (*Id.*, PageID 404, 398-406.)

Later, during his sentencing hearing, Petitioner's counsel acknowledged that Petitioner caused serious physical harm, saying:

> Now, as to the felonious assault. Here's what I'd like to say about that. First of all, **he knows that by punching this victim he caused serious physical harm.** There's no doubt about that. He punched her on purpose and then the result was this serious physical harm that she's had to have medical treatment for things like that.
>
> Whether he intended to cause that harm or not is not an element of the offense, but I think it goes towards mitigation. I think that it is clear from the fact that this was -- there was no weapon involved, it was just a punch, and it wasn't multiple punches, it was one single punch, it's clear that he did not intend to cause **the catastrophic damage that he did cause**. Nevertheless, he did cause it, that's why he pled guilty to it. This wasn't a difficult case, as far as the facts went. The elements were clear.

(ECF No. 10-1, PageID 320 (emphasis added).)  Petitioner himself acknowledged the harm he caused when speaking to the trial court judge, saying:  "I'd just apologize to the Court and to the victim of the situation, that I never intended to do the damage I did."  (ECF No. 10-1, PageID 322.)

Because he pled guilty to felonious assault, which includes the element of serious physical harm, Petitioner cannot now question whether the state could have proved that he caused such harm, or whether he caused any particular kind of serious physical harm.  His guilty plea established that he caused serious physical harm.  *Broce*, 488 U.S. at 569.

Petitioner's guilty plea also limits what issues he can raise in this case.  "A prisoner who has entered a guilty plea and who later attempts to attack the proceeding through a federal habeas corpus petition is ordinarily confined to raising only the issue of whether his guilty plea was knowing and voluntary."  *Torres v. Shelton*, No. 1:19-cv-2175, 2020 WL 4004574, at *13 (N.D. Ohio June 8, 2020), *report and recommendation adopted*, 2020 WL 4003279 (N.D. Ohio July

16

15, 2020) (citing *Broce*, 488 U.S. at 569). This inquiry considers the advice given by counsel.

*See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771

(1970)) ("Where, as here, a defendant is represented by counsel during the plea process and

enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether

counsel's advice 'was within the range of competence demanded of attorneys in criminal

cases.'").

> The Supreme Court has held that a defendant must have "sufficient awareness of
> the relevant circumstances and likely consequences" of his plea. *Brady v. United
> States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A guilty plea must
> be accompanied by "an affirmative showing that it was intelligent and voluntary."
> *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). **Such
> a showing is generally made by the government's production of a transcript of
> state court proceedings to establish that the plea was made voluntarily**. *Garcia
> v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993).

*McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (emphasis added).

A transcript has been provided here. (*See* Transcript of Change of Plea Hearing, ECF

No. 20-1.) As noted, Petitioner offers no argument with respect to any defects in the change of

plea proceeding itself that might render his plea unknowing or involuntary—such as whether the

trial court failed to inform him of a right that would be waived, or misinformed him about a

potential sentence, or whether counsel gave him incorrect advice about any part of the

proceeding or sentence. No such problems are immediately apparent in the transcript. The

Court need not search for errors in the proceeding that Petitioner has not identified.

Rather than challenge the plea proceeding or the advice of counsel, Petitioner points to

information he learned about the victim's injuries after he was convicted and sentenced. This is

not a basis for undermining his plea. *See Brady v. United States*, 397 U.S. 742, 757 (1970) ("A

defendant is not entitled to withdraw his plea merely because he discovers long after the plea has

been accepted that [he] misapprehended the quality of the State's case.").

Petitioner also questions where the trial court found factual support for statements that the victim had two surgeries and suffered a concussion and pinched nerve.  (Petition, PageID 6; Amd. Traverse, PageID 366-367.)  That the victim had a concussion was agreed to as part of the factual basis for the plea.  (Transcript of Change of Plea Hearing, ECF No. 20-1, PageID 405-406 ("The victim suffered a concussion.").)  That the victim required two surgeries was noted in the presentence investigation report, as later reviewed by the trial judge at the sentencing hearing:

> According to the presentence investigation, there's been two surgeries already. There's additional mental and dental things that had to be dealt with. And after she heals, in a year there will be two addition -- more additional surgeries at least. That's why no restitution's being ordered at this point in time. It won't be known for quite some time, because her injuries are going to take forever.

(ECF No. 10-1, PageID 325.) The presentence investigation report is not in the State Court Record filed in this case, but was apparently available or reviewed by Petitioner's counsel during the direct appeal, as evidenced by the section in his appellate brief entitled "What Did the Presentence Investigation Report Show?"  (ECF No. 10, PageID 57-58.)  At the sentencing hearing, neither Petitioner nor his counsel lodged any objection to the facts about the victim's injuries recited in presentence investigation report.  *See Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001) (where "petitioner did not object to the contents of the pre-sentence investigation report at sentencing[, her] failure to dispute the accuracy of her pre-sentence investigation report precludes her from maintaining a habeas corpus challenge to its consideration by the sentencing judge.").

Petitioner's questions—factual or rhetorical—fail to present a coherent argument that his guilty plea was unknowing and involuntary, and he has done nothing to undermine the validity of the plea proceeding as shown in the transcript.  *McAdoo*, 365 F.3d at 494.  The other rights and labels he invokes (the Confrontation Clause, the right to discovery) also fail to present a viable

challenge to his plea, and, as discussed next, are themselves barred by the plea. (*See* Traverse, PageID 366 (because "the state hinders the defendant, and takes away the right of the defendant to confront the state on the elements of the offense of felonious assault," and because of the lack of discovery, he "was unable to make a knowing and intelligent plea based upon all the evidence"); Amd. Traverse, PageID 381 (he "was unable to make an intelligent and voluntary plea based on evidence that was contradicted multiple times by the state").)

"The general rule is that a voluntary and unconditional guilty plea bars any subsequent non-jurisdictional attack on the conviction." *McKenzie v. United States*, No. 2:19-cv-211, 2023 WL 72386, at *3 (E.D. Tenn. Jan. 4, 2023) (quoting *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008)) (cleaned up). The Supreme Court of the United States has held that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior to* the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). And, "[w]hen a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (referring to, among other things, the Sixth Amendment right to confront one's accusers)). In other words, "[a]n unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations." *Baker v. Brewer*, No. 2:15-cv-11629, 2021 WL 1791553, at *10 (E.D. Mich. May 5, 2021) (citing *Tollett*, 411 U.S. at 267).

This includes the confrontation issue Petitioner raises in his Petition. (ECF No. 1, PageID 6.) The Confrontation Clause provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend.

VI.  The right to confront one's accuser "is a *trial* right," meaning that it applies *at trial. Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality opinion) (emphasis in original); *see also Kentucky v. Stincer*, 482 U.S. 730, 738 n.9 (1987) (collecting cases).  When Petitioner pled guilty, he gave up his right to a trial and his right to confront his accuser during that trial.  *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including . . . the right to confront one's accusers.").  Petitioner therefore cannot invoke this right as a basis for habeas corpus relief.  *See Sellers v. Ruehlman*, No. 1:07-cv-00842, 2009 WL 347654, at *1 (S.D. Ohio Feb. 10, 2009) (agreeing that a petitioner's guilty plea foreclosed any Confrontation Clause challenge in habeas corpus).

The State Court Record confirms that Petitioner gave up these constitutional rights.  He agreed, in his signed "Plea of Guilty" form that:

> I understand by pleading guilty <u>I give up my right</u> to a jury trial or court trial, <u>where I could confront</u> and have my attorney question <u>witnesses against me</u>, and where I could use the power of the Court to call witnesses to testify for me. I know at trial I would not have to take the witness stand and could not be forced to testify against myself and that no one could comment if I chose not to testify. I understand <u>I waive my right to have the prosecutor prove my guilt beyond a reasonable doubt on every element of each charge</u>.

(ECF No. 10, PageID 35.)  Petitioner told the state trial court that he understood he was giving up these rights:

> THE COURT:  Do you understand that by pleading guilty, you're giving up your right to a jury trial?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Do you also understand you're giving up your right to a trial to the Court without a jury?
>
> THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand you're giving up your right to confront and have your attorney cross-examine anybody who testifies against you?

THE DEFENDANT:  Yes, sir.

. . .

THE COURT:  Do you also understand you're giving up your right to confront and have your attorney -- or you also understand you're giving up your right at that trial not to -- to require the prosecutor to prove your guilt beyond a reasonable doubt of every element?

THE DEFENDANT:  Yes, sir.

(ECF No. 20-1, PageID 403-404.)  Having been given up, these rights cannot provide a basis for habeas corpus relief.

Another facet of Petitioner's argument is that the state did not turn over all of the victim's medical records (assuming they exist), and if the state had, Petitioner could have rebutted the statements that were made about her medical condition(s).  (Petition, PageID 6.)  He also suggests that without the records, his guilty plea was involuntary.  (Traverse, PageID 366; Amd. Traverse, PageID 381.)  Notably, Petitioner does not point to any particular pieces of evidence that the state allegedly withheld or provide specific details about what evidence was not provided to him.  Rather, as noted above, he appears to argue that the State Court Record shows that no medical records were provided to him in the first instance.  (Petition, PageID 6; Traverse, PageID 363, 366-369.)

It is true that, as a general proposition, "prosecutors must turn over favorable evidence to the accused when the evidence is material either to guilt or punishment; wrongful withholding is a violation of the right to due process."  *Robertson v. Lucas*, 753 F.3d 606, 619-20 (6th Cir. 2014) (citing *Brady v. Maryland*, 373 U.S. 83, 89 (1963)).  But this right to discovery applies pre-trial.  *See Littlepage v. Jenkins*, No. 1:16-cv-1005, 2017 WL 6508724, at *1 (S.D. Ohio Dec. 20, 2017), *report and recommendation adopted sub nom. Littlepage v. Warden, Chillicothe Corr.*

*Inst.*, 2020 WL 3957940 (S.D. Ohio July 13, 2020) (citing *District Attorney for Third Judicial District v. Osborne*, 557 U.S. 52, 68-69 (2009)) ("discovery is a pre-trial right only. [*Brady*] does not apply post-conviction.") (other internal citations omitted).  Any alleged pre-trial discovery violation is barred by Petitioner's guilty plea.  *Calvey v. Burt*, No. 17-1926, 2018 WL 2015779, *4 (6th Cir. Apr. 30, 2018) (citing *Tollett*, 411 U.S. at 267).

> More specific to this situation:
>
> The Supreme Court has never held that the *Brady* rule requires disclosure of exculpatory evidence prior to the entry of a plea, rather than for use at trial. On the contrary, the Supreme Court has repeatedly referenced the *Brady* rule as necessary to secure a fair trial before the fact finder. In *Brady,* the Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him . . . helps *shape a trial* that bears heavily on the accused." *Brady,* 373 U.S. at 87-88 (emphasis added). In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the court explained that the rule prohibiting the use of perjured testimony, upon which the *Brady* rule is founded, is based on the notion that the use of perjured testimony represents "a corruption of the truth-seeking function of the *trial process." Id.* at 104 (emphasis added). Similarly, in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court stated that "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a *fair trial." Id.* at 678 (emphasis added).
>
> In light of this focus on the effects of suppressing evidence on the truth-finding function of the jury at trial, several courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. The reasoning of this rule was aptly explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that **the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation.**" *Matthew v. Johnson,* 201 F.3d 353, 361-62 (5th Cir.2000).

*McClellan v. Rapelje*, No. 2:09-cv-10617, 2010 WL 5294366, at *11-12 (E.D. Mich. Nov. 15, 2010), *report and recommendation adopted,* 2010 WL 5293957 (E.D. Mich. Dec. 20, 2010) (final emphasis added); *see also Ruiz*, 536 U.S. at 633 ("the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."); *Calvey*, 2018 WL 2015779, at *4 (rejecting habeas petitioner's *Brady*

claim that prosecutors failed to disclose impeachment evidence on the basis of *Ruiz, supra*); *Post v. Bradshaw*, 621 F.3d 406, 426 (6th Cir. 2010) (rejecting a similar claim under *Ruiz*, saying that "even if all of his factual allegations [about failure to disclose evidence] were proven, [Petitioner] would not be entitled to relief.").  Likewise, relief would not be appropriate here.

Further, the discovery issue Petitioner attempts to link with his guilty plea would not necessarily invalidate it.  "[T]he Sixth Circuit has held that "a prosecutor's failure to disclose arguably exculpatory *Brady* material prior to plea bargaining did not render the defendant's guilty plea involuntary where a factual basis for the plea was established at the plea proceeding." *Littlepage,* 2020 WL 3957940, at *2 (quoting *Robertson,* 753 F.3d at 621).  Here, a factual basis for the plea was established at the change of plea hearing, as quoted above.  (*See* ECF No. 20-1, PageID 405-406.)  Neither this issue nor the other issues raised in Ground One and Ground Two present a coherent or cognizable reason that Petitioner's plea was involuntary and unknowing. *See generally United States v. Spaeth*, 69 F.4th 1190, 1207 (10th Cir. 2023) ("The guilty plea itself precludes defendants from raising pre-plea challenges.  To defeat that preclusion, the party pleading guilty must convince us that he or she did so involuntarily and unknowingly.  If that party fails to do so, our analysis ends.").

In addition, as noted above, Petitioner did not move to withdraw his guilty plea and did not challenge it on direct appeal, and has procedurally defaulted any direct challenge to it for purposes of this habeas corpus action.  The United States Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review" such as habeas corpus. *Bousley v. United States*, 523 U.S. 614, 621 (1998).  "[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.  Habeas review is an extraordinary remedy and 'will not be allowed to do service for an

appeal.'" *Id*. (quoting *Reed v. Farley,* 512 U.S. 339, 354 (1994)).  Where a "petitioner contested his sentence on appeal, but did not challenge the validity of his plea . . . petitioner procedurally defaulted the claim" that his plea was not knowingly and intelligently made.  *Bousley*, 523 U.S. at 621.

That is the situation here; Petitioner challenged his sentence on direct appeal but did not challenge the validity of his guilty plea.  His direct appeal brief asserted only one assignment of error:  that "The Trial Court Abused Its Discretion In Sentencing The Appellant to A Maximum Prison Term."  (ECF No. 10, PageID 51.)  Failing to raise an assignment of error challenging the guilty plea at that point in his direct appeal—as well as in a timely appeal to the Supreme Court of Ohio—means that any such claim is procedurally defaulted under *Bousley* and is not subject to consideration here.

Respondent argued at length that these claims are procedurally defaulted.  (Answer, PageID 340-349.)  Petitioner did not address the issue in in his Traverse or Amended Traverse. (ECF Nos. 14, 17.)  He has offered no argument why his claims are not procedurally defaulted or sought to excuse the procedural default, and the Undersigned sees no obvious argument with respect to this issue within his filings or the State Court Record.

Accordingly, the Undersigned concludes that the issues raised in Ground One and Ground Two are waived or barred by Petitioner's guilty plea, or not cognizable (an issue on which the Court can grant relief) in this habeas corpus action.  Any attempt to now undermine the guilty plea has been procedurally defaulted, and the default is not excused.  Ground One and Ground Two should be **DENIED.**

      **B.**      **<u>Ground Three – Maximum Sentence</u>**

Petitioner raises a sentencing argument in Ground Three.  He argues, without additional supporting facts or elaboration:

**GROUND THREE**:  Trial Court sentenced the petitioner to the maximum sentence, relying on evidence that was not proven to a jury beyond a reasonable doubt or admitted by the defendant[.]

(Petition, PageID 6.)  His argument in later filings appears to be that the trial court was required by a state statute to make a factual determination that he had committed "the worse form of the offense" or posed "the greatest likelihood of committing future crimes" before imposing a maximum sentence on him—but the trial court did not make those findings.  (Traverse, PageID 369-371 (citing Ohio Rev. Code § 2929.14(C)); Amd. Traverse, PageID 381-382.)  Petitioner further appears to argue that *had* the trial court made these findings, its determination would have violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and/or *Blakely v. Washington*, 542 U.S. 296 (2004), which prohibit judicial fact-finding.[1]  (*Id.*; *cf.* Petitioner's Direct Appeal Brief, ECF No. 10, PageID 54-56.)  Respondent argues that this claim—when read as a challenge to Petitioner's sentence on state law grounds—is not cognizable and is procedurally defaulted. (Answer, PageID 349-352.)

Indeed, claims that "arise out of a state trial court's sentencing decision are not generally cognizable upon federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law."  *McCauley v. Warden, Noble Corr. Inst.*, No. 2:20-cv-4957, 2020 WL 7090074, at *2 (S.D. Ohio Dec. 4, 2020) (quoting *Kerr v. Smith*, No. 3:07-cv-2990, 2009 WL 88054, at *6 (N.D. Ohio Jan. 12, 2009)); *see also Allen v. Stovall*, 156 F. Supp. 2d 791, 795 (E.D. Mich. 2001) (citing *Dennis v. Poppel,* 222 F.3d 1245, 1258 (10th Cir. 2000)) ("Generally, federal habeas review of a state court sentence ends

---

[1] In *Apprendi*, the Supreme Court of the United States said that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  Later in *Blakely*, the Supreme Court held "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303.

once the court makes a determination that the sentence is within the limitation set by statute."). Petitioner here does not argue that his sentence suffers from these problems.

Additionally, it is well-settled that an alleged violation of a state statute is not grounds for a federal habeas claim. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Galloway v. Howes*, 77 F. App'x 304, 305 (6th Cir. 2003) ("To the extent that Galloway contends that his sentence violates state law, the argument does not give rise to a cognizable claim for federal habeas corpus relief."); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only"); *Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006) ("Although state law may require a [state] trial judge to state the reasons for imposing a particular sentence on a defendant, the Constitution does not."). As noted above, habeas corpus is a remedy for some violations of *federal* law, not *state* law. *McCauley*, 2020 WL 7090074, at *2.

Beyond these general principles, the Undersigned observes that Petitioner's argument is premised on language in a state statute that was deleted several years before Petitioner was convicted and sentenced. Petitioner begins his argument on this issue in his Traverse by stating:

> R.C. 2929.14(C) reserves maximum prison sentences for the worst offenders and requires a sentencing Judge to make one of the two statutory findings before imposing a maximum sentence. That violates a defendant's Sixth Amendment rights under *Blakely v. Washington*, (2004) 542 U.S. 296, 124 St. Ct. 2531. The statutory finding that the defendant committed the worst form of the offense or poses "the greater likelihood of committing future crimes" created a requirement of a Judicial fact finding.

(Traverse, PageID 369 (erroneously labelled Ground Two).) But the statute no longer requires this. As one Ohio court explained in 2019:

> R.C. 2929.14(C) previously provided[2] that a maximum sentence could be imposed only upon offenders who committed the worst form of the offense, offenders who

---

[2] Ohio Revised Code § 2929.14(C), in effect until September 29, 2011, provided:

pose the greatest likelihood of committing future crimes, and certain repeat violent offenders. **This language was deleted from the statute in 2011**. <u>Sentencing courts are no longer required to explain its reasons for imposing a maximum sentence.</u>

*State of Ohio v. Cole*, 6th Dist. Erie No. E-18-061, 2019-Ohio-5425, 2019 WL 7369245, ¶ 34 (Dec. 31, 2019) (citations omitted) (emphasis added).

In other words, the first premise underlying Petitioner's argument in Ground Three is incorrect, as the statutory language he challenges was no longer in effect at the time of his prosecution. In 2018, when Petitioner pled guilty and was sentenced, the trial court was not required by Ohio Revised Code § 2929.14(C) to take the actions that Petitioner says would have violated his rights.

This Court discussed a similar claim in 2018, where the trial judge *did* make the then-required findings, but they were found to be "irrelevant":

> Henley's First Ground for Relief relies on *Blakely v. Washington*[.] . . . Henley says that he is challenging judicial factfinding for purposes of Ohio Revised Code §§ 2929.14(B), 2929.14(C), and 2929.14(E)(4). *Id.* at PageID 1800-01. Specifically, he asserts the *Blakely* violations occurred when Common Pleas Judge Langer relied on facts not found by the jury[.] Henley claims these [Ohio] statutes were found to violate *Blakely* by *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).[3] . . .

> [T]o the extent the relevant Ohio sentencing statutes **required** that certain facts be found before certain sentences could be imposed, the Ohio Supreme Court concluded in *Foster* that the provision for judicial factfinding was unconstitutional under *Blakely*. [The *Foster* court determined that] findings of fact of the sort prescribed by the statutes were no longer required to be made by judge or jury and

---

Except as provided in division (D)(7), (D)(8), (G), or (L) of this section, in section 2919.25 of the Revised Code, or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.

[3] The *Foster* decision was later abrogated by *Oregon v. Ice*, 555 U.S. 160 (2009), wherein the United States "Supreme Court expressly upheld requiring judicial fact finding in imposing consecutive rather than concurrent sentences." *Smith v. Moore*, 415 F. App'x 624, 629 (6th Cir. 2011). In the case currently before the Court, Petitioner was sentenced to serve his sentences in the case at issue *concurrently*, rather than *consecutively* (ECF No. 10, PageID 41), so *Ice* is not particularly relevant.

the judge could impose a sentence anywhere between the statutory minimum sentence and the statutory maximum sentence.

*Henley v. Marquis*, No. 3:17-cv-421, 2018 WL 3861870, *1-2 (S.D. Ohio Aug. 14, 2018) (emphasis in original), *report and recommendation adopted*, 2018 WL 5830868 (S.D. Ohio Nov. 7, 2018).

Here, Petitioner asserts that the state trial court should have made statutory findings but did not.  (Traverse, PageID 369-70; Amd. Traverse, PageID 381.)  Because the trial court did not in fact have to make these findings to sentence Petitioner to the maximum sentence after the 2006 *Foster* decision and after the requirement was deleted from Ohio Rev. Code § 2929.14(C) in 2011, the Court need not consider Petitioner's second, more academic question of whether such findings, if made in 2018, would have violated *Apprendi* or *Blakely*.  *See Foster*, 109 Ohio St.3d 1 at para. 2 of the syllabus ("judicial fact-finding is not required before a prison term can be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant.").

To the extent Petitioner may be arguing that the state trial court relied on information in the presentence investigation report and that *that* information was not proved to a jury or admitted by him, his claim fares no better.  (*See* Amd. Traverse, PageID 381.)  The *Apprendi/Blakely* line of cases said that "any fact that increases the penalty for a crime *beyond* the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Blakely*, 542 U.S. at 301-304 (emphasis added); *Barnes v. Stoddard*, No. 1:14-cv-742, 2023 WL 2662312, at *8 (W.D. Mich. Mar. 28, 2023) (discussing this line of cases).  Here, Petitioner received the statutory maximum sentence—not a sentence increased *beyond* the statutory maximum.  (ECF No. 10, PageID 40-42.)  In 2018 in Ohio, when Petitioner pled guilty and was sentenced, the statutory maximum for felonious assault, a felony of the second degree,

was a definite term of eight years in prison.  Ohio Rev. Code § 2903.11(A)(1), (D)(1)(a)

(defining felonious assault) (effective October 17, 2017 to March 19, 2019); Ohio Rev. Code §

2929.14(A)(2) (setting prison terms) (effective Oct. 17, 2017 to Oct. 30, 2018).  Petitioner

acknowledged this in his written guilty plea and at his change of plea hearing.  (ECF No. 10,

PageID 33; ECF No. 20-1, PageID 396, 398.)  Thus, after Petitioner admitted that he was guilty

of felonious assault, the state trial court was authorized to "impose a sentence anywhere between

the statutory minimum sentence and the statutory maximum sentence."  *Henley*, 2018 WL

3861870, at *2 (citing *Foster*); *see also Blakely*, 542 U.S. at 303-04 ("the relevant 'statutory

maximum' is not the maximum sentence a judge may impose after finding additional facts, but

the maximum he may impose *without* any additional findings.").

　　To the extent Petitioner may be arguing more broadly that the state trial judge

impermissibly exercised his discretion in sentencing Petitioner to the maximum sentence for

felonious assault without jury involvement, the Undersigned notes that the *Apprendi/Blakely*

cases do not prohibit this.  In 2013, the Supreme Court of the United States took care to say that

this line of cases

> does not mean that any fact that influences judicial discretion must be found by a
> jury. We have long recognized that broad sentencing discretion, informed by
> judicial factfinding, does not violate the Sixth Amendment. See, *e.g., Dillon v.
> United States,* 560 U.S. ——, ——, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010)
> ("[W]ithin established limits[,] ... the exercise of [sentencing] discretion does not
> contravene the Sixth Amendment even if it is informed by judge-found facts"
> (emphasis deleted and internal quotation marks omitted)); *Apprendi,* 530 U.S., at
> 481, 120 S.Ct. 2348 ("[N]othing in this history suggests that it is impermissible for
> judges to exercise discretion—taking into consideration various factors relating
> both to offense and offender—in imposing a judgment *within the range* prescribed
> by statute").

*Alleyne v. United States*, 570 U.S. 99, 116 (2013) (emphasis in original).

To the extent Petitioner may be suggesting that the facts discussed at the sentencing hearing were incorrect, he faces other hurdles.  As previously described, the state trial court judge noted as follows:

> According to the presentence investigation, there's been two surgeries already. There's additional mental and dental things that had to be dealt with. And after she heals, in a year there will be two addition -- more additional surgeries at least. That's why no restitution's being ordered at this point in time. It won't be known for quite some time, because her injuries are going to take forever.

(ECF No. 10-1, PageID 325.)  Petitioner did not object to or challenge these statements at the time, so he cannot challenge them here.  (*See* ECF No. 10-1, PageID 319-322 (defense counsel's and Petitioner's statements at the sentencing hearing).)  *See Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001) (where "petitioner did not object to the contents of the pre-sentence investigation report at sentencing[, her] failure to dispute the accuracy of her pre-sentence investigation report precludes her from maintaining a habeas corpus challenge to its consideration by the sentencing judge.").

The Sixth Circuit has said that:

> A sentence imposed on the basis of material "misinformation of constitutional magnitude" may violate due process under some circumstances. *Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (citation omitted). . . . The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988).

*Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005).  *See also Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006) (quoting *Ratliff v. United States*, 999 F.2d 1023, 1028 (6th Cir. 1993)) ("To establish a due process violation, petitioner would have to show 'that the sentencing court relied on false information in a presentence report which he was not afforded the opportunity to review'").

Here, Petitioner does not specifically argue (or demonstrate) that any particular statement in the presence investigation report is false, or that he was unable to review the report.  (*Cf.* Transcript of Sentencing Hearing, ECF No. 10-1, PageID 319 (trial counsel indicated he read the report); Petitioner's Direct Appeal Brief, ECF No. 10, PageID 57-58 (reciting some facts from the report).)  Petitioner instead queries whether these statements have factual support.  (*See*, *e.g.*, Amd. Traverse, PageID 381 (the trial court's statements at sentencing "lead the Petitioner to wonder what surgeries the trial court was talking about and where did they get this information from.")).[4]  Speculation and queries are an insufficient basis for habeas corpus relief.  *See Adams*

---

[4] *See generally* Ohio Rev. Code § 2951.03, entitled "Presentence investigation report; confidentiality," which says in relevant part:

> If a court orders the preparation of a presentence investigation report pursuant to this section, section 2947.06 of the Revised Code, or Criminal Rule 32.2, the officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant, all information available regarding any prior adjudications of the defendant as a delinquent child and regarding the dispositions made relative to those adjudications, and any other matters specified in Criminal Rule 32.2. . . . <u>If</u>, pursuant to section 2930.13 of the Revised Code, <u>the victim of the offense of which the defendant has been convicted wishes to make a statement regarding the impact of the offense for the officer's use in preparing the presentence investigation report, the officer shall comply with the requirements of that section.</u>

Ohio Rev. Code § 2951.03(A)(1) (effective September 14, 2016) (emphasis added).  Section 2930.13, entitled "Victim impact statement; presentence investigation report," in turn, says:

> (B) If a probation officer or other person is preparing a presentence investigation report pursuant to section 2947.06 or 2951.03 of the Revised Code or Criminal Rule 32.2 . . . <u>the victim may make a written or oral statement regarding the impact of the crime</u> or specified delinquent act to the probation officer or other person. The probation officer or other person shall use the statement in preparing the presentence investigation report or disposition investigation report and, upon the victim's request, shall include a written statement submitted by the victim in the presentence investigation report or disposition investigation report.

> (C) <u>A statement made by the victim</u> under division (A) or (B) of this section <u>may include the following</u>:

> (1) <u>An explanation of the nature and extent of any physical, psychological, or emotional harm suffered by the victim</u> as a result of the crime or specified delinquent act that is the basis of the case;

> (2) An explanation of the extent of any property damage or other economic loss suffered by the victim as a result of that crime or specified delinquent act;

*v. U.S. ex rel. McCann*, 317 U.S. 269, 281 (1942) ("the burden of showing essential unfairness be sustained by [the petitioner] who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.").

Petitioner also mentions "the consistency requirement" in his filings. (*See* Traverse, PageID 370; Amd. Traverse, PageID 381.) This may be reference to another Ohio sentencing statute, which says:

> A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and <u>consistent with sentences imposed for similar crimes committed by similar offenders</u>.

Ohio Rev. Code § 2929.11(B) (effective September 30, 2011 to October 28, 2018) (emphasis added). Petitioner further suggests that the state trial judge did not review the seriousness and recidivism factors set forth in the state statutes. (Amd. Traverse, PageID 381.)

Petitioner raised the propriety of his maximum sentence in his 2018 direct appeal to Ohio's Fifth District Court of Appeals, where he argued that: "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE APPELLANT TO A MAXIMUM PRISON

---

(3) An opinion regarding the extent to which, if any, the victim needs restitution for harm caused by the defendant or alleged juvenile offender as a result of that crime or specified delinquent act . . .

(D) If a statement made by a victim under division (A) of this section is included in a victim impact statement, the provision, receipt, and retention of copies of, the use of, and the confidentiality, nonpublic record character, and sealing of the victim impact statement is governed by division (B)(2) of section 2152.20 or by division (C) of section 2947.051 of the Revised Code, as appropriate. If a statement made by a victim under division (B) of this section is included in a presentence investigation report prepared pursuant to section 2947.06 or 2951.03 of the Revised Code or Criminal Rule 32.2 or in a disposition investigation report pursuant to division (C)(1) of section 2152.18 of the Revised Code, the provision, receipt, and retention of copies of, the use of, and the confidentiality, nonpublic record character, and sealing of the presentence investigation report or disposition investigation report that contains the victim's statement is governed by section 2951.03 of the Revised Code.

Ohio Rev. Code § 2930.13 (effective October 9, 2006 through April 5, 2023) (emphasis added).

TERM." *Atkinson I*, 2018-Ohio-4290, ¶ 6.  (ECF No. 10, PageID 54-60 (Petitioner's brief).)

The Court of Appeals' discussion encompasses some of the issues discussed above:

> *Whether the trial court properly imposed the maximum sentence in Atkinson's case.*

**(1). R.C. 2929.11 and R.C. 2929.12 and Maximum Sentences.**

{¶ 10} A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16; *State v. Taylor,* 5th Dist. Richland No. 17CA29, 2017-Ohio-8996, ¶ 16.

. . .

{¶ 14} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the court discussed the effect of the *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court severed the judicial-fact-finding portions of R.C. 2929.14, holding that "**trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences**." *Kalish* at ¶ 1 and ¶ 11, *citing Foster* at ¶ 100, *See also, State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823.

{¶ 15} "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, *see also State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1; *State v. Firouzmandi* supra at ¶ 29.

{¶ 16} Thus, post-*Foster,* "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter*, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061; *State v. Delong,* 4th Dist. No. 05CA815, 2006-Ohio-2753 at ¶ 7-8. Therefore, post-*Foster*, trial courts are still required to consider the general guidance factors in their sentencing decisions.

{¶ 17} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. . . .

{¶ 18} In the case at bar, the trial court had the benefit of a pre-sentence investigation report, a letter from [the victim], letters on behalf of Atkinson and [the victim] and the arguments of counsel. The trial court observed,

> You have three prior felony convictions, the last one being a weapon under disability; the other two being one possession of cocaine, an F4, and possession of marijuana; and prior to that was possession of cocaine with a forfeiture specification where 11 firearms, were taken away. And you were on community control with that when you committed this offense.

> The Court would also note that you were charged twice with domestic violence, only the -- one was the conviction. You have seven suspensions of your license.

> * * *

> According to the presentence investigation, there's been two surgeries already. There's additional mental and dental things that had to be dealt with. And after she heals, in a year there will be two addition -- more additional surgeries at least. That's why no restitution's being ordered at this point in time. It won't be known for quite some time, because her injuries are going to take forever. I don't know if the children's injuries will ever be recovered. They were out trick-or-treating when all this happened.

> Upon review of all this, the Court feels that the appropriate sentence will be an eight-year sentence on the felony of the second degree; a six-month sentence on the misdemeanor of the first degree, to be served concurrently. The Court will order that you be given 12 days credit towards that sentence.

> The Court finds that -- this to be appropriate, given the nature and seriousness of your conduct, when it occurred, how it occurred, and the fear that you have created to those around you.

Sent. T. Feb. 12, 2018 at 9-11.

{¶ 19} Accordingly, the trial court considered the purposes and principles of sentencing [R.C. 2929.11] as well as the factors that the court must consider when determining an appropriate sentence. [R.C. 2929.12]. The trial court has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.

{¶ 20} Upon a thorough review, we find the record clearly and convincing supports the sentence imposed by the trial court. We find the trial court properly considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the applicable factors set forth in R.C. 2929.12, along with all other relevant factors and circumstances. While Atkinson may disagree with the weight given to these

factors by the trial judge, Atkinson's sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law.

{¶ 21} Atkinsons sole assignment of error is overruled. The judgment of the Muskingum County Court of Common Pleas is affirmed.

*Atkinson I*, 2018-Ohio-4290, ¶¶ 10-21 (October 22, 2018) (emphasis added).  (ECF No. 10, PageID 76-84.)

Petitioner did not take a timely appeal to the Supreme Court of Ohio from this decision but did seek a delayed appeal in December 2018.  (*See* ECF No. 10, PageID 86-88.)  The Supreme Court of Ohio denied his motion and dismissed the appeal.  *State v. Atkinson*, 154 Ohio St. 3d 1510, 2019-Ohio-601, 116 N.E.3d 1289 (Feb. 20, 2019) (table).  (ECF No. 10, PageID 101.)

To the extent that a cognizable claim is presented concerning Petitioner's sentence, any such claim is procedurally defaulted.  As noted above, "[a] petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules."  *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (quoting *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000)).  Petitioner here did not present his sentencing claim—whatever its contours—to the Supreme Court of Ohio according to its rules in a timely direct appeal.  *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i).[5]  Thus, "[t]he  denial of [Petitioner's] 'motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of [his] habeas corpus petition.'"  *Wilson v. Fender*, No. 20-4168, 2021 WL 3642334, at *4 (6th Cir. May 11, 2021) (quoting *Bonilla*, 370 F.3d at 497)).

---

[5] "To perfect a jurisdictional appeal from a court of appeals to the Supreme Court [of Ohio] as defined by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court [of Ohio] within forty-five days from the entry of the judgment being appealed."  Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i).

Petitioner does not challenge Respondent's argument (ECF No. 11, PageID 350-352) that this claim is procedurally defaulted in his Traverse or Amended Traverse. (ECF No. 14, 17.) He similarly offers no argument in his filings here that would establish grounds for setting aside the procedural default. (*Id.*). However, Petitioner did argue to the Supreme Court of Ohio that he failed to perfect a timely appeal there because he did not receive a copy of the Court of Appeals' decision in his direct appeal from appointed appellate counsel until fifteen days after it was entered. (ECF No. 10, PageID 88 (October 22 to November 6, 2018).) To the extent that this could present an assertion of infective assistance of appellate counsel to excuse the procedural default, the Undersigned will consider it in the interest of completeness.[6] *See Bradford v. Warden, Ohio State Penitentiary,* No. 1:18-cv-215, 2019 WL 633357, at *8 (S.D. Ohio Feb. 14, 2019), *report and recommendation adopted*, 2019 WL 1410366 (S.D. Ohio Mar. 28, 2019) ("The ineffective assistance of appellate counsel can serve as cause to overcome a procedural default."); *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 432 (6th Cir. 2006) ("To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, U.S. CONST. amend. VI, a defendant must show both that his counsel's performance was deficient, and that his counsel's deficient performance was prejudicial.").

"The failure of an appellate counsel to timely inform a petitioner of a state appellate court decision can constitute ineffective assistance of counsel." *Turner v. Gray*, No. 5:18-cv-1285,

---

[6] For an ineffective assistance claim to serve as cause to excuse procedural default, that claim (the ineffective assistance claim) must itself have been properly presented to the state courts and not procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Here, Petitioner raised this issue to the Supreme Court of Ohio in his motion for a delayed appeal. The Sixth Circuit's decision in *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 432 n.7 (6th Cir. 2006), discussed more herein, suggests that this alone is insufficient. *See also Johnson v. Turner,* No. 2:14-cv-1908, 2016 WL 6963177, at *5 (S.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 WL 111785 (S.D. Ohio Jan. 11, 2017) (collecting cases) ("Petitioner also procedurally defaulted his claim of the denial of the effective assistance of appellate counsel concerning notifying him of the disposition of his direct appeal. Such claim therefore cannot constitute cause for his procedural default."). Nonetheless, out of an abundance of caution, the Undersigned will consider whether this claim could establish cause.

2020 WL 2575369, at *9 (N.D. Ohio Feb. 28, 2020), *report and recommendation adopted*, 2020 WL 2572322 (N.D. Ohio May 20, 2020). As the Sixth Circuit has acknowledged, "counsel has a duty to inform the accused of the resolution of a proceeding in a timely fashion so that the accused retains his control over the decision to appeal." *Smith,* 463 F.3d at 434. However, no deficient performance is apparent in the situation described by Petitioner. The Court of Appeals entered its judgment on October 22, 2018 (ECF No. 10, PageID 85) and the docket reflects that a copy of the judgment was mailed to appointed counsel that same day.[7] Counsel apparently received and then mailed the documents to Petitioner approximately one week thereafter, on October 30, 2018. (ECF No. 10, PageID 89.) This short timeframe (which included the time for mailing and receipt, and a weekend) does not rise to the level of deficient performance of counsel. *Compare Smith*, 463 F.3d at 434 (finding deficient performance where the evidence showed that counsel mailed the decision just six days before petitioner's appeal was due).

No prejudice is apparent here either. In this respect, the Sixth Circuit has

> appl[ied] a rebuttable presumption that if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal—here, forty-five days—the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for the counsel's deficient failure to notify the defendant of the decision. In the absence of other circumstances hindering the defendant's ability to attempt to appeal the decision within this time frame, allowing a greater amount of time would generally bestow a windfall upon the defendant whose counsel promptly failed to notify the defendant of a decision.

*Smith*, 463 F.3d at 435. Here, Petitioner said he received the Court of Appeals' judgment on November 6, 2018. (ECF No. 10, PageID 88.) He did not file his motion for delayed appeal

---

[7] The online docket of Petitioner's direct appeal in Case No. CT2018-0015 is available by name or case number search at https://clerkofcourts.muskingumcounty.org/services/ (last accessed Jan. 8, 2024). This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

until <u>fifty-five days</u> later, on December 31, 2018.[8] (*Id.*, PageID 86.) Because this is greater than the forty-five days permitted to file an appeal to the Supreme Court of Ohio, *see* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i), there is a rebuttable presumption that Petitioner was not prejudiced by any alleged failure by counsel. *Smith,* 463 F.3d at 435; *see also Baker v. Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012) (quoting *Smith* and applying the presumption to find petitioner did not establish prejudice). Petitioner has provided no rebuttal to this presumption.

Where there is no showing of either deficient performance or prejudice, any alleged ineffectiveness of counsel does not provide grounds to set aside the procedural default for Petitioner's sentencing claim in Ground Three. Accordingly, the Undersigned concludes that Ground Three does not present a cognizable habeas corpus claim or one that is rooted in the reality of the legal landscape that existed when Petitioner was sentenced. To the extent that a cognizable claim is presented concerning his sentence, any such claim is procedurally defaulted, and the procedural default is not excused. Ground Three should be **DENIED**.

### C.      <u>Ground Four – Unlawful Entry</u>

Petitioner asserts that Muskingum County Sheriff's Deputies violated his rights by entering his home without a warrant, probable cause, or exigent circumstances. (Petition, PageID 7-8.) This Ground appears to invoke the protections of the Fourth Amendment. *See generally Howard v. Warren*, No. 08-10222, 2011 WL 1598414, at *5 (E.D. Mich. Apr. 28, 2011) (quoting *Payton v. New York*, 445 U.S. 573, 585, 586, 576, 590 (1980)) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant

---

[8] Ohio courts do not apply a "prison mailbox rule" to deem a document filed when it is signed and submitted to prisoner officials for mailing. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011) (citing *State ex rel. Tyler v. Alexander*, 52 Ohio St.3d 84, 555 N.E.2d 966, 967 (1990)) (rejecting *Houston v. Lack*, 487 U.S. 266 (1988)) ("Ohio does not have a prison-mailbox rule similar to that of the federal government"). Applying such a rule would not change this determination in any event; Petitioner's motion for delayed appeal was signed on December 24, 2018, which is <u>forty-eight days</u> after the judgment he wanted to appeal. (ECF No. 10, PageID 88.)

are presumptively unreasonable.  Thus, absent exigent circumstances, the police may not make a

warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest.")

(cleaned up).

> Petitioner says:
>
> [T]he Muskingum County Sheriff's office was called in response to a call from a friend of the victim to report a domestic violence.  Sheriff's deputies went directly to the friend's house to get at what occurred[.]
>
> Petitioner was accused by [A.B.] of punching her in the face.  After speaking with [A.B.] the deputies had one side of the dispute when they went to the home of the petitioner, he was in his kitchen playing guitar and singing along with his girl and his sister.
>
> The Muskingum County Sheriff's deputies violated the [Petitioner's] rights by making entry into [Petitioner's] home without probable cause and exigent circumstances.
>
> Sheriff's deputies entered into [Petitioner's] home when [he] refused to come out his home without being served a warrant.

(Petition, PageID 7-8.)  It appears Petitioner was arrested during or after these events.[9]  (*Id*.)  The

above quote represents all Petitioner's argument on this issue; he does not address Ground Four

in his Traverse or Amended Traverse.  (ECF Nos. 14, 17.)

---

[9] Petitioner later sued officers involved in the events at his home under 42 U.S.C. § 1983.  *See Atkinson v. Muskingum Cnty. Comm'rs.*, No. 2:19-cv-2562, 2019 WL 6212397 (S.D. Ohio Nov. 21, 2019), *report and recommendation adopted*, 2019 WL 6798919 (S.D. Ohio Dec. 13, 2019).  This Court recited Petitioner's allegations that:

> On October 29, 2017, members of the Muskingum County Sheriff's Department made contact with the Plaintiff at his home after receiving a complaint that he assaulted the mother of his children.  Deputies spoke to Plaintiff through a kitchen window, and Plaintiff indicated that they could not come inside without a warrant.
>
> Shortly thereafter, Defendant Williams allegedly raised the screen in the window and, along with Defendant Dodson, "dove through the kitchen window," landing on top of Plaintiff.  Plaintiff was knocked unconscious from his head hitting the floor, and Defendants Williams and Dodson "began to punch on the Plaintiff with closed fist[s]."  After being handcuffed, another deputy on the scene, Defendant Archer, "punched the Plaintiff twice more with a closed fist" causing Plaintiff to fall "back to the floor."  Defendant Archer "also allowed his K-9 partner Defendant Narco to aggressively put its face within inches of the plaintiff, as if Defendant Archer was going to allow Defendant Narco to bite Plaintiff with no provocation."  While he was unconscious, Defendants Williams, Archer, Dodson, and Lynn "punched and kicked Plaintiff repeatedly."  Deputies then

The record in this case reflects that Petitioner was charged with two counts of assault on a peace officer and one count of resisting arrest for the events at his home (in addition to the felonious assault and domestic violence charges for his interaction with [A.B.]).  (*See* Indictment, ECF No. 10, PageID 28 (Counts 3-5).)  In exchange for Petitioner's guilty plea, the two counts of assault on a peace officer were dismissed.  ("Plea of Guilty" form, ECF No. 10, PageID 33-35; State's Motion to Dismiss, ECF No. 10, PageID 38.)  *See also Atkinson I*, 2018-Ohio-4290, ¶¶ 2-3.  Petitioner pled guilty to one count of resisting arrest, a misdemeanor.  (Judgment Entry, ECF No. 10, PageID 40-41; Change of Plea Hearing, ECF No. 20-1, PageID 396, 399, 404-406.)  Petitioner was sentenced to "a term of local incarceration of six months" on this charge, "to be served concurrently" with his eight-year sentence for felonious assault.  (Judgment Entry, ECF No. 10, PageID 40-41; Transcript of Sentencing Hearing, ECF No. 10-1, PageID 325.)  The sentence began in February 2018, when Petitioner was sentenced.  (Transcript of Sentencing Hearing, ECF No. 10-1, PageID 315, 326 (remanding Petitioner "to the custody of the sheriff to begin [his] sentence" on February 12, 2018).)  Six months has passed.  Thus, it appears that the conviction and sentence for resisting arrest—the only conviction arising from the described events at Petitioner's home—was fully served at least two years before Petitioner submitted this habeas corpus petition in November 2021.  (ECF No. 1, PageID 9.)

This means that Petitioner was no longer "in custody" on the misdemeanor resisting arrest conviction and sentence when he filed the Petition.  A "Notice of Calculation of Sentence"

---

dragged Plaintiff outside where he "began coming to and started screaming for help." He was subsequently taken to the hospital where he was treated for a number of injuries to his head and face.

*Atkinson*, 2019 WL 6212397, at *1 (internal citations to the § 1983 complaint omitted).

filed in Petitioner's trial court case on September 6, 2022 appears to confirm this—it does not include the misdemeanor conviction and sentence at all as of that date.[10]

Under 28 U.S.C. § 2254(a), district courts have jurisdiction to entertain petitions for habeas corpus relief "only from persons who are *in custody* in violation of the Constitution or law or treaties of the United States." *Maleng v. Cook,* 490 U.S. 488, 490 (1989) (emphasis in original) (internal citation and quotation marks omitted). "[T]he habeas petitioner must be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Id.* (citing *Carafas v. Lavallee,* 391 U.S. 234, 238 (1968)). Except in limited situations not relevant here, the custody requirement is not met if the petitioner files his habeas corpus petition after the sentence imposed for the challenged conviction has "fully expired." *See id.* at 493-94; *see also Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 401 (2001); *Steverson v. Simmers,* 258 F.3d 520, 522-25 (6th Cir. 2001).

This issue normally arises where *all* of a petitioner's sentences in a particular criminal case have been served. Courts routinely dismiss habeas cases for lack of jurisdiction in that situation. *See, e.g., Hautzenroeder v. DeWine*, 887 F.3d 737, 739-40 (6th Cir. 2018) (affirming dismissal of habeas petition filed "after her period of incarceration and community control expired—in other words, when she was no longer 'in custody.'"); *Parks v. Knight*, No. 18-3863, 2019 WL 4391455, at *2 (6th Cir. Jan. 4, 2019) (denying certificate of appealability where Petitioner was not "in custody" with respect to a conviction and sentence already served). This case presents a slightly different situation, because only *one* of Petitioner's convictions in the same case has expired. Here, Petitioner here remains in custody of the conviction and sentence

---

[10] The Notice is dated August 25, 2022, is on ODRC letterhead, appears to be signed by an official of the ODRC's Bureau of Sentence Computation, and is addressed to the state trial court judge. Available by name or case number (CR2017-0410) search at https://clerkofcourts.muskingumcounty.org/eservices/ (last accessed Jan. 8, 2024).

for felonious assault,[11] but is no longer in custody on the conviction and sentence for resisting arrest.

Another district court in this Circuit addressed a similar situation and found that it lacked jurisdiction to consider the *portion* of a petitioner's habeas corpus petition that was directed toward the conviction and sentence that had already been fully served.  In *Eller v. Bock,* the United States District Court for the Eastern District of Michigan put it this way:

> The petitioner was convicted of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; malicious destruction of police property, Mich. Comp. Laws § 750.377b; and resisting or obstructing a police officer, Mich. Comp. Laws § 750.479, following a jury trial in the Montcalm County Circuit Court in 1996. He was sentenced as a third habitual offender, *see* Mich. Comp. Laws § 769.11, to concurrent terms of 160 to 240 months imprisonment, 64 to 96 months imprisonment, and 32 to 48 months imprisonment, respectively, on those convictions. . . .
>
> In *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973), the Supreme Court stated that "[i]t is clear, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." Whether a habeas corpus petitioner is in custody for purposes of §§ 2241 and 2254 is determined at the time that the petition is filed. *Carafas v. LaVallee,* 391 U.S. 234, 238 (1968). Although a prisoner's release from custody subsequent to the filing of the petition may render his case moot, such a release does not affect the custody question. Moreover, the term "custody" is not limited solely to physical confinement. *Sanders v. Freeman,* 221 F.3d 846, 850-51 (6th Cir.2000). For instance, persons on parole, probation, or bail may be "in custody" for purposes of §§ 2241 and 2254. . . . However, after a petitioner's sentence for a conviction has completely expired, the collateral consequences of that conviction are insufficient to render him "in custody" under § 2254(a). *Clemons v. Mendez,* 121 F.Supp.2d 1101, 1102–03 (E.D.Mich.2000) (citing *Maleng v. Cook,* 490 U.S. 488, 492 (1989) (per curiam) (additional internal quotation omitted)).
>
> The petitioner in this case had fully served his sentence for the resisting or obstructing a police officer conviction at the time he filed his petition. The record

---

[11] According to motions for judicial release filed in his state trial court case, Petitioner was later convicted of menacing by stalking and violation of a protection order in *State v. Atkinson*, Muskingum County Case No. CR2022-0041.  Available by name or case number search at https://clerkofcourts.muskingumcounty.org/eservices/ (last accessed Jan. 8, 2024).  He is serving an aggregate sentence of seventeen months for those two offenses, which is to be served consecutively with the sentences in the case at issue here.  *See also* the ODRC's website, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A741899 (last accessed Jan. 8, 2024).

reveals that the petitioner's sentence for that conviction expired on November 17, 1999. The sentence for that crime was to run concurrent to the longer sentences for the other two convictions; thus it has no effect on his present confinement. *Cf. Garlotte v. Fordice,* 515 U.S. 39, 45-47 (1995) (concluding that prisoner serving consecutive sentences is in custody for all of those sentences in the aggregate, and may attack the sentence scheduled to run first, even after it has expired, until *all* the consecutive sentences have been served). The United States Supreme Court has "never held however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Maleng,* 490 U.S. at 491. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *in custody* in violation of the Constitution or laws or treaties of the United States." *Id.* at 490 (quoting 28 U.S.C. § 2241(c)(3)). This Court, therefore, does not have jurisdiction over claims relating to the petitioner's conviction for resisting and obstructing a police officer.

After examining the arguments in the petition, it is apparent that claims I, II, III, VIII, X, and XI relate exclusively to the petitioner's challenge to his conviction for resisting and obstructing a police officer. . . . <u>This Court will dismiss these claims for want of subject matter jurisdiction.</u>

*Eller v. Bock*, No. 00-10095, 2003 WL 87417, at *1, 4-5 (E.D. Mich. Jan. 7, 2003).[12]  On appeal,

the Sixth Circuit denied a certificate of appealability, echoing the district court's rationale:

Eller raises five issues regarding his conviction for resisting or obstructing a police officer.  However, Eller has completed serving his sentence with regards to this

---

[12] This decision in *Eller* was later revisited by the district court where additional proceedings provided evidence that the petitioner *had* still been serving his sentence for resisting or obstructing a police officer when the petition was filed.  *See Eller v. Bock*, No. 00-10095, 2007 WL 1695910, at *2 (E.D. Mich. June 12, 2007).  The court explained:

On June 8, 2003, the Court filed an opinion and order denying the petition. The Court concluded that some of the claims lacked merit; however, because the petitioner had completed his sentence on the charge of resisting or obstructing a police officer when he filed his habeas petition and therefore was not "in custody" as to that charge, the Court concluded it had no jurisdiction to review the claims relating solely to that conviction. Claims I, II, III, VIII, X, and XI were dismissed for lack of jurisdiction.

Thereafter, the petitioner returned to state court and initiated proceedings that resulted in the issuance of an amended judgment of sentence, which reduced the number of pretrial custody days credited against the petitioner's sentence. The effect of the amended judgment was to change the termination date of the sentence on the resisting or obstructing conviction so that the sentence had not ended when the habeas petition was filed. The Court then granted the petitioner's motion for relief from judgment, vacated the judgment as to claims I, II, III, VIII, X, and XI, and reopened the case.

*Eller*, 2007 WL 1695910 (June 12, 2007).  This subsequent history does not invalidate the legal principles on which the original decision relied.

conviction. Therefore, he is not "in custody" for the purposes of § 2254 and not entitled to habeas relief on these issues. *See Garlotte v. Fordice*, 515 U.S. 39, 45-47 (1995); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Johnson v. O'Dea,* No. 92-6083, 1994 WL 51581, at *1-4 (6th Cir. Feb 18, 1994).

*Eller v. Bock*, No. 03-1093 (6th Cir. June 26, 2003). *Accord Siarkiewicz v. McNeil*, No. 4:07-cv-383, 2009 WL 399430, at *10 (N.D. Fla. Feb. 18, 2009), *report and recommendation adopted,* 2009 WL 903384 (N.D. Fla. Mar. 30, 2009) (finding that petitioner, in custody on one sentence, was no longer in custody on concurrent sentences for other offenses that had already expired, and that the court should not consider his claims directed to those offenses); *Skupin v. Bergh*, No. 2:20-cv-10261, 2021 WL 623905, at *2 (E.D. Mich. Jan. 11, 2021) (citing *Ward v. Knoblock*, 738 F.2d 134, 136-38 (6th Cir. 1984)) ("a petitioner who has fully served his or her sentence does not satisfy the custody requirement for that charge merely because that petitioner is serving a prison sentence or other restraint on another conviction that is not being challenged in the habeas petition.").

The United States Court of Appeals for the Tenth Circuit has noted that "in unpublished decisions, a considerable number of courts have concluded that a habeas petitioner may not challenge an expired sentence that was imposed concurrently with sentences that he or she continues to serve." *Mays v. Dinwiddie,* 580 F.3d 1136, 1140 n.1 (10th Cir. 2009).[13] The *Mays* court found that a prisoner who was still serving the longer of two concurrent sentences, but who had completed the term of the shorter sentence, was not in custody for the purposes of

---

[13] The Tenth Circuit cited "*Clark v. Russell*, No. 92-3097, 1992 WL 259355, at *1 (6th Cir. Oct.5, 1992); *Siarkiewicz v. McNeil*, No. 4:07-cv383, 2009 WL 399430, at *10 (N.D.Fla. Feb.18, 2009); *Gonzales v. Outlaw*, No. 2:08CV00035, 2008 WL 4911255, at *3 (E.D.Ark. Nov. 13, 2008); *Alegria v. Quarterman*, No. 4:07-CV-130-Y, 2008 WL 440306, at *3 (N.D.Tex. Feb.19, 2008); *Eller v. Bock*, No. 00-10095-BC, 2003 WL 87417, at *5 (E.D.Mich. Jan.7, 2003); *Dodge v. Superintendent, Merrimack County House of Corr.*, No. 00-309-M, 2001 WL 1570944, at *2 (D.N.H. Oct.31, 2001)."

challenging the conviction underlying the shorter sentence.  The Sixth Circuit has recognized the

decision in *Mays.  See Bowling v. White*, 694 F. App'x 1008, 1016 n.5 (6th Cir. 2017).[14]

 The Undersigned concludes that, to the extent Petitioner here is challenging his

conviction and sentence for resisting arrest in Ground Four, this Court lacks jurisdiction to

consider (or cannot grant him relief on) his claim because he is no longer in custody for that

conviction and sentence.

 To the extent Petitioner may be indirectly challenging his felonious assault and/or

domestic violence convictions on the basis of the alleged illegal entry and arrest (as Respondent

views him to be arguing), other issues prevent this Court from granting relief on Ground Four.

For example, Fourth Amendment claims concerning an allegedly unreasonable search and

seizure are generally found to be non-cognizable in a habeas corpus case.  *Stone v. Powell*, 428

U.S. 465, 494 (1976);[15] *see also Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013) (citing

---

[14] The Sixth Circuit said, among other references to *Mays*:

> It is true that the Supreme Court has allowed habeas challenges to <u>consecutive</u> sentences that were either already served, *see Garlotte*, 515 U.S. at 45-46, 115 S.Ct. 1948, or had yet to be served, *Peyton v. Rowe*, 391 U.S. 54, 67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). This makes sense because a successful challenge to a consecutive sentence (whether expired or impending) will necessarily shorten the prisoner's term of incarceration. *See Garlotte*, 515 U.S. at 47, 115 S.Ct. 1948. The same is not true of challenging an expired <u>concurrent</u> sentence. Even if successful, invalidation of an expired concurrent sentence will have no effect on the ultimate length of incarceration. *See May*s, 580 F.3d at 1140-41.

*Bowling*, 694 F.App'x. at 1016 n.5 (emphasis added).

[15] The Supreme Court in *Stone v. Powell* held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494.  *See also Good v. Berghuis*, 729 F.3d at 637 (referring to these as "exclusionary rule claims").  *Stone* does not exactly fit Petitioner's argument here; Ground Four does not allege that *evidence* was obtained in an unconstitutional search of his home, or that it was used *at trial*.  As discussed, Petitioner pled guilty and did not have a trial, and his plea provided sufficient evidence of his guilt.  Further, the record contains no suggestion that law enforcement officers illegally obtained, or that Petitioner sought to exclude or suppress, evidence obtained from Petitioner or from his house after his arrest.  Petitioner may simply claim that officers illegally obtained *him* after the illegal entry into his home.  (*See* Second Post-Conviction Petition, ECF No. 10, PageID 203-204 (asserting that officers could have gotten a warrant and that Petitioner was entitled to stay in his home).)  To the extent *Stone* applies in this context, Petitioner has not articulated any reason (and the Undersigned sees none) to exempt this claim from its bar.  *See Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)) ("A habeas petitioner may not seek habeas relief on a claim of illegal arrest if he had a full and fair opportunity to raise

*Stone* at 490) ("the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty.").

Relatedly, Petitioner's guilty plea bars habeas corpus relief on the basis of the Fourth Amendment for the reasons discussed in Grounds One and Two. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). In this respect, the Supreme Court of the United States has specifically

> recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized. State law treats a guilty plea as "a break in the chain of events [that] preceded it in the criminal process," *Tollett v. Henderson*, supra, 411 U.S., at 267, 93 S.Ct., at 1608. Therefore, the conclusion that a Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty does not rest on any notion of waiver, but rests on the simple fact that the [Fourth Amendment] claim is irrelevant to the constitutional validity of the conviction.

*Haring v. Prosise*, 462 U.S. 306, 321 (1983). *See also United States v. Gregg*, 463 F.3d 160, 163-64 (2d Cir. 2006) (citing *Haring* and *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975)) (noting that "a guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue").

The Undersigned concludes that this Court lacks jurisdiction to consider (or cannot grant Petitioner relief on) any challenge to Petitioner's fully served conviction and sentence for

---

the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes."); *Thompson v. Warden, Pickaway Corr. Inst.*, No. 2:22-cv-2042, 2023 WL 5352519, at *2 (S.D. Ohio Aug. 21, 2023) (report and recommendation) ("With respect to Fourth Amendment claims, their review in habeas corpus is barred if the petitioner received a full and fair opportunity to litigate them in state court. [*Stone v. Powell*] requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism."). Absent any argument on this issue from Petitioner—who did not respond Respondent's argument on this issue in his Traverse or Amended Traverse—the Undersigned declines to fashion such an argument on his behalf.

resisting arrest. To the extent Petitioner may be challenging his other convictions for felonious assault and/or domestic violence, his Fourth Amendment claim is non-cognizable here and is otherwise barred by his guilty plea. Ground Four should be **DENIED**.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A state prisoner seeking federal habeas corpus relief is not automatically entitled to appeal a district court's decision denying relief unless the district court issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). A district court should issue or deny a COA "when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts.

To be entitled to a COA, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Sixth Circuit has also cautioned that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

"When a district court denies a claim on procedural grounds, the court may issue a COA only if the applicant shows 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *1 (6th Cir. May 21, 2020) (quoting *Slack*, 529 U.S. at 484).

Here, reasonable jurists could not debate that Petitioner's claims concerning his felonious assault conviction and sentence are, as described in the sections above, not cognizable in habeas corpus, waived or barred by his guilty plea, and/or procedurally defaulted. *Calvey v. Burt*, No.

17-1926, 2018 WL 2015779, at *4 (6th Cir. Apr. 30, 2018) ("The agreement that Calvey alleges that prosecutors failed to disclose would have been impeachment evidence, and Calvey's allegations therefore fail to make a substantial showing of the violation of a constitutional right. Calvey's claims of prosecutorial misconduct do not deserve encouragement to proceed further.") Reasonable jurists would not disagree that the procedural default is unexcused, particularly where no argument has been offered to excuse it.  Likewise, reasonable jurists would not disagree that this Court cannot consider challenges to Petitioner's resisting arrest conviction, because he is no longer in custody on that conviction.  *Transou v. Boyd*, No. 22-5166, 2022 WL 3910512, at *3 (6th Cir. Aug. 19, 2022) ("Reasonable jurists could not debate the district court's conclusion that it lacked jurisdiction over [the petitioner's] amended habeas petition insofar as it related to his [already served] conviction.").  A certificate of appealability, therefore, should be **DENIED** on all four Grounds for Relief.

## VI.    CONCLUSION AND RECOMMENDED DISPOSITION

Upon review of the Petition, the State Court Record, Respondent's Answer, and Petitioner's Traverse and Amended Traverse, the undersigned Magistrate Judge concludes that Petitioner is not entitled to relief on his Petition.  The Undersigned therefore **RECOMMENDS** that:

1. the Court **DENY** all four Grounds for Relief and **DISMISS** the Petition **WITH PREJUDICE**.

2. the Court **DENY** a certificate of appealability with respect to all four Grounds for Relief.

3. the Court **CERTIFY** that any appeal of the Court's decision resolving the case would not be taken in good faith, and on that basis **DENY** Petitioner leave to proceed *in formal pauperis* on appeal.

Petitioner is reminded that he must keep this Court informed of his current address and promptly file a Notice of New Address if he is released or transferred.

## VII.    NOTICE REGARDING OBJECTIONS TO THIS REPORT AND RECOMMENDATIONS

If any party objects to this Report and Recommendations ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof.  Fed. R. Civ. P. 72(b); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Court.  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: January 10, 2024                    /s/ *Elizabeth A. Preston Deavers*
                                           ELIZABETH A. PRESTON DEAVERS
                                           UNITED STATES MAGISTRATE JUDGE